CHIEF JUSTICE McGRATH
dissenting.
¶38 Milky Whey should be allowed to proceed on its claim in Montana courts. I dissent from the resolution of Issue 2 and concur with the Court’s resolution of Issue 1.
¶39 Montana courts have specific jurisdiction to entertain the civil action brought by Milky Whey against Dairy Partners. I agree that the jurisdictional analysis must begin with a determination of whether Dairy Partners transacted “any business” in Montana as provided in M. R. Civ. P. 4B(1).
¶40 The complaint alleges only a single transaction between Milky Whey and Dairy Partners, but there had been numerous other transactions between the parties. Facts acknowledged by the parties establish that not only did Milky Whey purchase products from Dairy Partners, but Dairy Partners also made substantial purchases of products from Milky Whey. In the three years before the transaction at issue, Milky Whey sold over $181,000 worth of products to Dairy Products in nine separate transactions. Dairy Products solicited those sales by phone or email communications directed to the Milky Whey office in Missoula, Montana. Milky Whey would similarly respond to Dairy Products to consummate the details of the sale.
¶41 These facts support the conclusion that Dairy Products transacted business in Montana for purposes of specific jurisdiction under M. R. Civ. P. 4B(1). As in Spectrum Pool Prod., ¶ 16, Dairy Products “purposely interjected itself into Montana” through its several dealings with Milky Whey. This is not a “mere act of entering into a contract with a forum resident,” Simmons, 206 Mont. at 291, 670 P.2d at 1386, but represents purposeful acts through which Dairy Products did repeated business with a Montana company. Milky Whey is a Montana business. It generates income and employment here, utilizes local infrastructure, and pays taxes. The payment to Dairy Products originated in Montana, and the refund promised by Dairy Products (according to the allegations of the complaint) would have accrued in Montana. Montana, as the forum state, provided the setting which allowed Dairy Products to engage in the various transactions with Milky Whey over a span of years.
¶42 It is clear that there were sufficient contacts to constitute the *88 transaction of business here. This is especially true in light of the realities of contemporary commerce in which people and companies regularly interact in nation-wide and indeed international transactions. Many of these transactions are conducted electronically without the necessity of face-to-face communication. Milky Whey and Dairy Products engaged in a pattern of transactions, sufficiently establishing that Dairy Products was in fact transacting “any business” in Montana. Grizzly Sec., ¶ 30. Dairy Products operated, as it was entirely entitled to do, well beyond the borders of its home state, but doing so can entail commensurate burdens, such as being subject to jurisdiction in the courts of another state. See Great Plains Crop Mgmt. Inc. v. Tryco Mfg. Co., Inc., 554 F. Supp. 1025, 1027.
¶43 Further, subjecting Dairy Products to jurisdiction in Montana courts on this claim would comport with notions of fair play and substantial justice, consistent with due process. While Dairy Products would be burdened by defending the action in Montana, there is no clear advantage or disadvantage to one side or the other in terms of witnesses and evidence. Dairy Products has no substantive equitable argument for insisting on a Minnesota forum for this action. Montana has a clear interest in assisting a Montana business in the resolution of a commercial dispute. Montana can provide a forum for resolution of this dispute without offending Dairy Products' interests in due process.
¶44 I would reverse the District Court and allow the cause of action to proceed in Montana courts.
JUSTICE WHEAT joins the Dissent of CHIEF JUSTICE McGrath.